James Saul (OSB #152809)
Wild & Scenic Law Center
3519 NE 15th Ave., #207
Portland, OR 97212
Tel. (503) 342-2839
jamie@wildandsceniclaw.org

*Counsel for plaintiffs; additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER and NORTHWEST GUIDES AND ANGLERS ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC SEAFOOD AQUACULTURE LLC, PACIFIC SHELLFISH-TILLAMOOK LLC, and DULCICH, INC.,<br><br>Defendants. | Case No. 25-cv-00328<br><br>COMPLAINT<br><br>Federal Clean Water Act (28 U.S.C. § 1331 and 33 U.S.C. § 1365(a)) |

## INTRODUCTION

1.  This is a complaint for injunctive and declaratory relief and civil penalties under the Federal Water Pollution Control Act, commonly known as the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("CWA" or "Act"). Plaintiffs Northwest

COMPLAINT – 1

Environmental Defense Center ("NEDC") and the Northwest Guides and Anglers Association ("NWGAA") bring this suit under section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), against three affiliated business entities identified collectively herein as "Pacific Seafood" for their ongoing violations of the Act that have contributed to the degradation of Tillamook Bay in Tillamook County, Oregon.

2.      Pacific Seafood owns and operates several oyster harvesting vessels that operate in Tillamook Bay, and holds several oyster plat leases in Tillamook Bay that grant Pacific Seafood the exclusive right to harvest oysters from approximately 1,573 acres of the Bay. Within this acreage Pacific Seafood engages in a destructive practice known as "mechanical" oyster harvesting that regularly dredges and scrapes sediment from the bottom of Tillamook Bay; pulls huge clumps of native eelgrass up by their roots; and then redeposits those dredged materials into the waters of Tillamook Bay and the Pacific Ocean.

3.      Pacific Seafood's mechanical harvesting practices harms the waters of Tillamook Bay by increasing suspended sediment and turbidity in the water column; releasing nutrients and other pollutants that would otherwise remain bound to the sediment of the Bay; and drastically thinning the meadows of eelgrass growing in the Bay that provide habitat for fish and other aquatic species, including endangered Oregon Coast Coho salmon.

4.      Pacific Seafood's mechanical harvesting practices harm NEDC, NWGAA, and their members because it impairs the quality of their fishing, boating, and other commercial and recreational activities on the Bay; reduces the aesthetic

COMPLAINT – 2

and spiritual benefits of their outdoor activities on and near the Bay; and degrades the habitat used by fish and other aquatic species that NEDC's and NWGAA's members enjoy fishing for, studying, and observing during their outings on Tillamook Bay, among other harms.

5. Pacific Seafood's mechanical harvesting practices result in the discharge of dredged material to waters of the United States—an activity that is unlawful under the CWA unless authorized by a permit issued by the U.S. Army Corps of Engineers under section 404 of the Act, 33 U.S.C. § 1344. Yet Pacific Seafood does not hold such a permit that would authorize and appropriately regulate those discharges. These discharges are ongoing and will continue to occur on each day that Pacific Seafood engages in mechanical oyster harvesting in Tillamook Bay.

6. NEDC and NWGAA seek injunctive and declaratory relief under section 505(a) and (d) of the CWA, 33 U.S.C. §§ 1365(a) and (d), including an order requiring Pacific Seafood to take all steps necessary to promptly and permanently end its CWA violations. NEDC and NWGAA also seek the imposition of civil penalties for each of the CWA violations for which Pacific Seafood is found liable, pursuant to section 309(d) of the CWA, 33 U.S.C. § 1319(d), as adjusted by 40 C.F.R. § 19.4. NEDC and NWGAA also seek an award of costs and attorney fees pursuant to 33 U.S.C. § 1365(d), and any other remedy this Court deems just and proper.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). The requested relief is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

8. Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1) because the events giving rise to the claims alleged herein occurred in Tillamook County, Oregon, which is located within this judicial district and division.

9. As required by the CWA, 33 U.S.C. § 1365(b), by letter dated October 23, 2024, NEDC and NWGAA provided Pacific Seafood with notice of their intent to file this suit to abate the violations alleged herein. As required by 40 C.F.R. § 135.2(a)(1), NEDC and NWGAA sent copies of its notice letter to the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator for EPA Region 10, and the Director of the Oregon Department of Environmental Quality ("DEQ").

10. More than sixty days have passed since NEDC and NWGAA's notice of intent to sue was given to the proper parties, and Pacific Seafood continues to violate the CWA. Neither EPA nor DEQ has commenced or is diligently prosecuting a civil or criminal action to abate the violations alleged in this complaint.

## PARTIES

11. Plaintiff Northwest Environmental Defense Center is a membership organization suing on behalf of itself and its members. NEDC is an independent

COMPLAINT – 4

non-profit corporation organized and existing under the laws of the State of Oregon. NEDC maintains its principal place of business in Multnomah County, Oregon. Since 1969, the staff, student volunteers, and members of NEDC have advocated for cleaner water and air and for the preservation of public lands and wildlife habitat across the Pacific Northwest.

12. Plaintiff Northwest Guides and Anglers Association is an Oregon non-profit corporation with its principal place of business in Oregon City, Clackamas County, Oregon. Among other purposes, NWGAA represents the interests of commercial and professional sportfishing guides and advocates for policies that improve water quality, protects and restores aquatic habitat, and promotes wild fish production in the Pacific Northwest.

13. Several of NEDC and NWGAA's members regularly use and enjoy the waters of Tillamook Bay in and around the areas where Pacific Seafood engages in mechanical oyster harvesting, and have future plans to continue using the Bay for commercial, recreational, aesthetic, spiritual, conservation, educational, and other purposes. These members enjoy fishing, boating, guiding, wading, and hiking the shoreline near Tillamook Bay, and they have observed on numerous occasions increased turbidity, floating clumps of eelgrass, and other impacts caused by Pacific Seafood's mechanical oyster harvesting practices and its resulting discharges of dredged materials to the Bay and the Pacific Ocean. As a result, their commercial, aesthetic, and recreational enjoyment of the Bay has been diminished.

COMPLAINT – 5

14.     Several of NEDC and NWGAA's members are active professional fishing guides who lead guided fishing trips on Tillamook Bay. These members have observed Pacific Seafood's oyster harvesting activities on many occasions, and have seen the resulting increase in water turbidity that results from Pacific Seafood's oyster dredging and harvesting activities along the bottom of the Bay. These members have also observed floating clumps of uprooted eelgrass floating in the Bay and the Pacific Ocean on many occasions, which is often deposited by falling tides on the shores of the Bay.

15.     These NEDC and NWGAA members have experienced diminished professional and personal fishing opportunities because the increased water turbidity and excessive floating clumps of uprooted eelgrass makes it harder to locate and successfully catch fish in the Bay. In addition, their fishing lines and the fishing lines of their paying customers often get tangled with eelgrass that has been uprooted by Pacific Seafood's operations, forcing them to curtail their fishing and guiding activities in Tillamook Bay.

16.     Several of NEDC's and NWGAA's members are local conservationists who have devoted considerable time, energy, and money to the restoration of the Bay and the protection of its aquatic species. These NEDC and NWGAA members are concerned that Pacific Seafood's unlawful discharges of dredged material (including sediment and uprooted eelgrass) threaten aquatic life and, in particular, the endangered Oregon Coast Coho salmon that use the Bay as habitat.

17.     Unless the relief requested in this complaint is granted, Pacific Seafood's violations will continue unabated and will continue to injure NEDC and NWGAA and their members' commercial, aesthetic, recreational, and other interests in Tillamook Bay and the aquatic life it supports.

18.     Defendant Dulcich, Inc. is an Oregon corporation with a primary place of business at 16797 SE 130th Avenue, Clackamas, Oregon 97015. Dulcich, Inc., at least in part, owns and operates the vessels engaged in the unpermitted discharge of dredged material in Tillamook Bay as alleged herein, and at least in part, employs, directs, and supervises the individuals who operate those vessels.

19.     Defendant Pacific Seafood Aquaculture, LLC is an Oregon limited liability company with its primary place of business at 16797 SE 130th Avenue, Clackamas, Oregon 97015. The sole member of Pacific Seafood Aquaculture, LLC is defendant Dulcich, Inc. Pacific Seafood Aquaculture, LLC, at least in part, owns and operates the vessels engaged in the unpermitted discharge of dredged material in Tillamook Bay as alleged herein, and at least in part, employs, directs, and supervises the individuals who operate those vessels.

20.     Defendant Pacific Shellfish – Tillamook, LLC is an Oregon limited liability company with its primary place of business at 5150 Hayes Oyster Drive, Bay City, Oregon 97107. The sole member of Pacific Shellfish – Tillamook, LLC is Pacific Seafood Aquaculture, LLC. Pacific Shellfish – Tillamook, LLC, at least in part, owns and operates the vessels engaged in the unpermitted discharge of

COMPLAINT – 7

dredged material in Tillamook Bay as alleged herein, and at least in part, employs, directs, and supervises the individuals who operate those vessels.

## LEGAL BACKGROUND

21. Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a)(1).

22. Section 301(a) of the CWA prohibits "the discharge of any pollutant by any person" except as in compliance with the Act. 33 U.S.C. § 1311(a).

23. The phrase "discharge of a pollutant" is defined by the Act to include "any addition of any pollutant to navigable waters from any point source[.]" *Id.* § 1362(12).

24. The word "pollutant" is defined by the Act to include "dredged spoil," "solid waste," "biological materials," "rock, sand, [and] cellar dirt," and "agricultural waste," among other types of waste. *Id.* § 1362(6).

25. The phrase "point source" includes "any discernible, confined and discrete conveyance" including a "vessel or other floating craft . . . from which pollutants are or may be discharged." *Id.* § 1362(14).

26. "Navigable waters" are defined by the Act to mean the "waters of the United States," which include waters that are "used in interstate or foreign commerce" (i.e., are navigable in fact or are used for commercial fishing and aquaculture activities), as well as the "territorial seas" which include that portion of the Pacific Ocean that extends from the ordinary low water mark along the coast

COMPLAINT – 8

seaward to a distance of three miles. *Id.* § 1362(7), (8); 33 C.F.R. § 328.3(a); 40 C.F.R. § 120.2(a).

27.     The CWA creates two main permitting programs: the National Pollutant Discharge Elimination System ("NPDES") established by section 402 of the Act, 33 U.S.C. § 1342, and the "dredge and fill" or "404" permit program created by section 404 of the Act, *id.* § 1344. NPDES permits are the primary means of authorizing and regulating point source discharges of pollutants (e.g., effluent from a wastewater treatment plant or factory), whereas 404 permits are the primary means of authorizing and regulating discharges of dredged or fill material to navigable waters, including coastal waters and wetlands.

28.     The U.S. Army Corps of Engineers ("Corps") implements the 404 permitting program in most states, including Oregon. Regulations promulgated by the Corps define the phrase "discharge of dredged material" to mean "any addition of dredged material into, including redeposit and resuspension of dredged material other than incidental fallback within, the waters of the United States." 40 C.F.R. § 232.2. That term also includes "[a]ny addition, including redeposit other than incidental fallback, of dredged material, including excavated material, into waters of the United States which is incidental to any activity, including mechanized landclearing, ditching, channelization, or other excavation." *Id.*

29.     Vegetation cutting or removal activity within a water of the United States that "substantially disturbs the root system" or "involves mechanized pushing, dragging, or other similar activities that redeposits excavated soil

COMPLAINT – 9

material" is a discharge of dredged material under the Act. *See* 40 C.F.R. 232.2, definition of "discharge of dredged material," subsection (2)(ii).

30.  Discharges consisting solely of "incidental fallback" are exempt and do not require a permit under the CWA. While the phrase "incidental fallback" is not presently defined by Corps or EPA regulation, a prior regulation defined it to mean the redeposit of small volumes of dredged material that is incidental to excavation activity and that falls into "substantially the same place from which it was initially removed." *See* 40 C.F.R. § 232.2(2)(ii)(2008).

31.  A person wishing to discharge dredged or fill material into the waters of the United States must first obtain a permit under section 404 of the CWA. *See* 33 U.S.C. § 1344. Any discharge of dredged material, other than incidental fallback, into waters of the United States is unlawful without a 404 permit.

32.  The Corps routinely issues permits under section 404 for aquaculture activities, including but not limited to Nationwide Permit 48 for Commercial Shellfish Mariculture Activities ("NWP 48"). *See generally* 86 Fed. Reg. 2744 (Jan. 13, 2021). Using its authority under the CWA, the Corps has clarified that a 404 permit is required "for a mechanical or hydraulic harvesting activity" within waters of the United States "if that activity results in a regulated discharge of dredged material by having more than incidental fallback." *Id*. at 2790.

33.  Section 505 of the CWA authorizes citizens to bring a civil action against any person, including a municipality, who is alleged to be in violation of an effluent standard or limitation under the CWA. 33 U.S.C. § 1365(a). An effluent

standard or limitation includes "an unlawful act under" section 301(a)—that is, the unpermitted discharge of pollutants to navigable waters. *Id.* § 1365(f)(1).

## FACTUAL BACKGROUND

### Pacific Seafood's Mechanical Oyster Harvesting Activities in Tillamook Bay

34. Mechanical harvesting is the practice of using machinery or equipment, usually dragged along the bed of a waterbody while being pulled behind a boat, to harvest shellfish. It is distinguished from "manual" harvesting techniques, in which shellfish are harvested by hand without the use of mechanized equipment.

35. According to the Oregon Department of Fish and Wildlife ("ODFW"), mechanical oyster harvesting is "of concern to ODFW, and the practice is very contentious to other users of" Tillamook Bay.[1] "Eelgrass beds are directly affected by physical disturbance and removal of the emergent blades and roots-rhizomes during mechanical dredging and harrowing operations. . . . In addition to direct disturbance to eelgrass plants, the maintenance and growth of eelgrass can also be indirectly affected by increased turbidity and elevated loads of suspended sediments associated with disturbance of the unconsolidated sediments during dredging, harrowing, and mechanical harvest operations." *Id.*

---

[1] Letter from Matthew Hunter, Shellfish Project Leader, ODFW, to Shellfish Plat Leasing Program, Natural Resource Division, ODA (Dec. 10, 2021), Re: Oyster Plat Application- Pacific Seafood Group (hereinafter "ODFW Letter").

COMPLAINT – 11

36. Pacific Seafood holds at least six commercial oyster plat leases, issued by the Oregon Department of Agriculture ("ODA"), collectively covering approximately 1,573 acres of Tillamook Bay. These plat leases give Pacific Seafood the exclusive right to engage in commercial oyster cultivation and harvesting within the boundaries defined by each lease.

37. The older, "legacy" plat leases held by Pacific Seafood are unique in that they do not prohibit mechanical oyster harvesting. According to ODFW, "[m]echanical harvesting of oysters has not been permitted in any plat lease in intertidal areas managed by the ODA since" at least 2006, and "is not included as an allowed method of harvest in the 2021 Memo of Understanding (draft) between ODA and ODFW." ODFW Letter at 3.

38. Four of these plat leases—the leases for Plat Nos. 2, 11, 20, and 23 in Tillamook Bay—identify "Frank Dulcich (Coast Seafoods Company)" or "Frank Dulcich, dba Coast Seafoods Company" as the lessee. There is no currently active business in Oregon registered with the Oregon Secretary of State under the name "Coast Seafoods Company," and Pacific Seafood is the present leaseholder and operator that conducts oyster harvesting under these four plat leases.

39. Two of the plat leases—the leases for Plat Nos. 10 and 18—identify "Pacific Oyster Company" as the lessee. Pacific Oyster Company is an assumed business name registered by defendant Pacific Shellfish–Tillamook, LLC.

COMPLAINT – 12

40. Pacific Seafood purchased, subleased, or otherwise acquired its oyster plat leases in Tillamook Bay specifically because they do not prohibit mechanical harvesting.

41. Pacific Seafood owns and operates at least two oyster harvesting vessels that operate on Tillamook Bay.

42. Pacific Seafood operates an "on bottom" oyster cultivation operation in Tillamook Bay; this practice requires the attachment of juvenile pacific oyster spats to a large mother shell, which is distributed on the plat with a vessel operated by Pacific Seafood at high tide. The shells fall through the water column and settle on the substrate of Tillamook Bay where they mature before being harvested by Pacific Seafood.

43. As part of its oyster cultivation process, Pacific Seafood uses a metal harrow that is dragged by a vessel through the substrate of Tillamook Bay to oxygenate the sediment and ensure that the oysters do not sink into the mud during the cultivation cycle.

44. When oysters are ready for harvest, Pacific Seafood utilizes a mechanical harvesting method in which a metal blade or dredge is dragged by a vessel along and scrapes the substrate of the Bay with a bag attached to the trailing end of a metal frame. Mature oysters tumble into the bag, which is then hauled to the surface by Pacific Seafood employees aboard the vessel.

45. Pacific Seafood's mechanical oyster cultivation and harvesting activities dredges the bottom of Tillamook Bay, churning up dirt, sediment, and

other materials and redepositing some of it in locations other than from where it was originally removed.



A harrow on the deck of the Shellfish Express, one of Pacific Seafood's
oyster harvesting vessels operating in Tillamook Bay.
Photo: Samantha Swindler / The Oregonian (2024)

46. Some of the sediment dredged by Pacific Seafood's mechanical oyster cultivation and harvesting activities remains suspended in the water column, where it can be observed by the human eye in the form of a plume that is visible behind Pacific Seafood's oyster harvesting vessels. Some of this dredged and suspended sediment is carried by current, tides, or the wind a significant distance before it

COMPLAINT – 14

settles out of the water column and is redeposited in the waters of Tillamook Bay or the Pacific Ocean.

47. Pacific Seafood's mechanical oyster cultivation and harvesting activities dredges, uproots, and removes clumps of eelgrass from the bed of Tillamook Bay. This eelgrass removal substantially disturbs the root system of the eelgrass.

48. Some of the eelgrass that is dredged, uprooted, and removed by Pacific Seafood's oyster harvesting vessels remains suspended or floating within the waters of Tillamook Bay.

49. Some of the eelgrass that is dredged, uprooted, and removed by Pacific Seafood's oyster harvesting vessels is removed entirely from the water of Tillamook Bay by harvesting equipment, and is then discarded or redeposited elsewhere in the water by Pacific Seafood employees aboard its oyster harvesting vessels.

50. Some of the eelgrass that is dredged, uprooted, and removed by Pacific Seafood's oyster harvesting vessels is carried by current, tides, or the wind to other locations within the Bay and is redeposited on the bed or shores of the Bay at low tide.



Uprooted clumps of eelgrass washed ashore in Tillamook Bay
Photo by Scott Gordon (May 20, 2023)

51.     Pacific Seafood's mechanical oyster harvesting activities involve mechanized pushing, dragging, dredging, or other similar activities that redeposits excavated soil material within the waters of Tillamook Bay and the Pacific Ocean.

52.     Pacific Seafood typically engages in mechanical oyster cultivation or harvesting activities in Tillamook Bay on each and every day of the year, although the exact schedule depends on weather conditions, the tides, and other factors determined by Pacific Seafood employees.

53.     Pacific Seafood's mechanical oyster cultivation and harvesting activities in Tillamook Bay have occurred annually since at least 2002.

54.     Pacific Seafood has maintained its oyster plat leases in Tillamook Bay; has recently purchased new vessels to aid in its mechanical oyster cultivation and

COMPLAINT – 16

harvesting in Tillamook Bay; and has the means to continue the mechanical cultivation and harvesting of oysters in Tillamook Bay indefinitely in the future.

55.     Pacific Seafood has approximately 270 acres of active, on-bottom cultivation in Tillamook Bay. At present, approximately 40,500 to 67,500 bushels of Pacific Seafood's oysters remain on the bed of the Bay, awaiting harvest. At current wholesale prices, these oysters have a market value between $5,000,000 to $8,500,000.

56.     Given the high value of its on-bottom oysters currently in cultivation and awaiting harvest in Tillamook Bay, Pacific Seafood is strongly incentivized to mechanically harvest those oysters with or without a 404 permit.

57.     Pacific Seafood does not hold a permit issued under CWA section 404 that authorizes the discharge of dredged material in Tillamook Bay.

## CLAIM FOR RELIEF

**Discharges of pollutants, including dredged material, to waters of the United States without a permit in violation of CWA section 301(a), 33 U.S.C. § 1311(a)**

58.     NEDC and NWGAA incorporate and re-allege each of the preceding paragraphs as if fully stated herein.

59.     The CWA prohibits "the discharge of any pollutant by any person" except as in compliance with the Act. 33 U.S.C. § 1311(a).

60.     Pacific Seafood has engaged in the mechanical cultivation or harvesting of oysters in Tillamook Bay, using a vessel and harrow or dredge, on each day of the typical year, and has done so since at least 2002.

COMPLAINT – 17

61.     The vessels, harrow, dredge, and appurtenant equipment used by Pacific Seafood in the mechanical cultivation and harvesting of oysters in Tillamook Bay are "point sources" within the meaning of the CWA.

62.     Tillamook Bay is a "water of the United States" within the meaning of the CWA.

63.     The sediment, nutrients, and uprooted eelgrass that are dredged up by Pacific Seafood's vessel and harrow during the course of its mechanical cultivation and harvesting of oysters in Tillamook Bay are "pollutants" within the meaning of the CWA.

64.     On each day that Pacific Seafood engages in the mechanical cultivation or harvesting of oysters in Tillamook Bay using a vessel, harrow, or dredge, it discharges pollutants—including but not limited to dredged material, sediment, and uprooted eelgrass—into the waters of Tillamook Bay and the nearshore waters of the Pacific Ocean.

65.     Pacific Seafood's pollutant discharges are not "incidental fallback" within the meaning of the CWA or its implementing regulations.

66.     Pacific Seafood does not hold a permit under section 404 of the CWA authorizing the discharge of pollutants to Tillamook Bay.

67.     Pacific Seafood has not taken action to reduce or eliminate its pollutant discharges to Tillamook Bay. Those discharges are ongoing and, unless abated by an order of the Court, will continue indefinitely.

68. Each occasion upon which Pacific Seafood discharges pollutants to Tillamook Bay without a 404 permit is a violation of an "effluent standard or limitation" under the CWA's citizen suit provision. 33 U.S.C. § 1365(a)(1), (f)(7).

69. Pacific Seafood's unlawful and unpermitted discharges warrant the imposition of declaratory and injunctive relief and the assessment of civil penalties in the amount of up to $66,712 per day of violation. 33 U.S.C. §§ 1365(a), 1319(d); 40 C.F.R. § 19.4.

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs NEDC and NWGAA respectfully request that this Court grant the following relief:

1. Assess civil penalties against Pacific Seafood in the amount of $66,712 per day of violation;

2. Permanently enjoin Pacific Seafood from discharging pollutants into Tillamook Bay unless and until it obtains a permit under CWA section 404 or otherwise comes into compliance with the CWA;

3. Issue injunctive relief requiring Pacific Seafood to remediate the environmental damage and ongoing impacts of its unlawful and unpermitted discharges to Tillamook Bay;

4. Award plaintiffs their costs of litigation, including reasonable attorney and expert witness fees, pursuant to 33 U.S.C. § 1365(d); and

5. Grant such other relief as the Court deems just and proper.

Dated February 27, 2025.

        s/ James N. Saul

        James Saul (OSB #152809)
        Wild & Scenic Law Center
        3519 NE 15th Ave., #207
        Portland, OR 97212
        Tel. (503) 342-2839
        jamie@wildandsceniclaw.org


        s/ Mary M. Stites

        Mary Stites (OSB #225005)
        Northwest Environmental Defense Center
        10101 S. Terwilliger Blvd.
        Portland, OR 97217
        Tel. (503) 768-6747
        mary@nedc.org

        *Counsel for plaintiffs Northwest Environmental Defense Center and Northwest Guides and Anglers Association*

COMPLAINT – 20